# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# PINE BLUFF DIVISION

KENNY HALFACRE                                                                                    PLAINTIFF
ADC #84410

v.                                         5:16cv00313-JLH-JJV

CORRECT CARE SOLUTIONS; *et al.*                                                         DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge J. Leon Holmes. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing.  Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

**I.     INTRODUCTION**

Kenny Halfacre ("Plaintiff") brings this action *pro se* and under 42 U.S.C. § 1983.  (Doc. No. 2.)  He alleges he has been denied adequate and timely dental care while incarcerated at the Varner Unit of the Arkansas Department of Correction ("ADC").  (*Id*. at 5-6.)  He seeks compensatory and punitive damages.  (*Id*. at 6.)  Defendant Correct Care Solutions ("CCS") is the only remaining defendant.[1]  Plaintiff has filed a Motion for Summary Judgment and Defendant CCS has responded with a Cross Motion for Summary Judgment, each contending they are entitled to judgment as a matter of law.  (Doc. Nos. 47, 53.)  Plaintiff has responded to Defendant CCS's Cross Motion (Doc. No. 56), and this matter is now ripe for a decision.  After careful review of the pending Motions, and for the following reasons, I find summary judgment in Defendant CCS's favor is appropriate and Plaintiff's claims should be DISMISSED.

---

[1] Plaintiff's claims against Defendant Rory Griffin were dismissed with prejudice for failure to state a claim.  (Doc. No. 28.)  His claims against Defendant Jason Kelley were dismissed without prejudice for failure to exhaust administrative remedies.  (Doc. No. 46.)

## II.     FACTS

According to Plaintiff's Complaint, he has several teeth that have been in need of immediate attention for several months. (Doc. No. 2 at 5.) He contends he has not received the care he needs in a timely manner because the Varner Unit cannot keep a full-time dentist, instead relying on the services of a part-time dentist. (*Id*. at 5-6.)

Plaintiff's relevant dental records begin with a health services request form submitted on May 1, 2016, in which Plaintiff stated he had "several teeth that need dental work with the most serious being a front tooth that chipped while [he] was eating on 4-30-16." (Doc. No. 54-1 at 1.) This request was triaged by an RN on the day it was submitted. (*Id*.) It was designated a "Priority 3" – not emergent or urgent, but a "routine request" to be addressed within seventy-two hours. (*Id*.) The request was received in the dental department on May 2, 2016. (*Id*.) Pursuant to this request, Plaintiff was seen in dental sick call on May 10, 2016.[2] (*Id*. at 2.) Steven N. Stringfellow, D.D.S., noted composite fillings were recommended for tooth number 09 – the chipped tooth – as well as for numbers 02 and 21. (*Id*.) Plaintiff was placed on the "restorative list." (*Id*.) He was seen for his restorative visit on July 18, 2016. (*Id*. at 3.) On that date, the composite filling on 09 was completed by Dr. Stringfellow. (*Id*.) Composite fillings for 02 and 21 were still recommended. (*Id*.) According to Plaintiff's deposition testimony, Dr. Stringfellow did not prescribe any pain medication during this time because Plaintiff was already taking some. (Doc. No. 54-2 at 54.)

Plaintiff filled out another health services request form on August 21, 2016. (Doc. No. 54-1 at 4.) He stated Dr. Stringfellow had repaired one tooth but "left 4 others that need immediate

---

[2] Plaintiff's claims have previously been limited to incidents occurring on or after May 25, 2016. (Doc. Nos. 41, 46.) This information is relevant to show context.

3

attention." (*Id.*) For unknown reasons, this request was not received in the dental department until September 6, 2016. (*Id.*) In the meantime, on August 27, 2016, Plaintiff submitted another request, stating he had three teeth that were very painful and "trying to abscess." (*Id.* at 5.) This request was triaged by the medical department on August 28, 2016, and was designated a "Priority 2" – an urgent need to be addressed within forty-eight hours. (*Id.*) It was received in the dental department on August 29, 2016. (*Id.*) Pursuant to this request, Plaintiff was seen by Dr. Stringfellow in dental sick call on August 31, 2016. (*Id.* at 6.) At that point Plaintiff said he had two teeth that were "trying to abscess." (*Id.*) Dr. Stringfellow noted Plaintiff had "[s]everal nonrestorable teeth w/ mobility" and that these teeth were abscessed with "[f]istula and/or cyst present." (*Id.*) Dr. Stringfellow recommended extraction of numbers 03, 12, 13, and 27. (*Id.*) He continued to recommend composite fillings for 02 and 21. (*Id.*) He prescribed an antibiotic for ten days and a pain reliever for thirty days and placed Plaintiff on the surgery list. (*Id.*)

Plaintiff filed his Complaint on September 30, 2016. (Doc. No. 2 at 1.) He notes he waited two months from the initial consult to have the chipped tooth (09) filled – from May 10, 2016, until July 18, 2016. (*Id.* at 5.) He also states the antibiotic prescribed by Dr. Stringfellow on August 31, 2016, expired on September 10, 2016; in the meantime, he had endured "severe and constant pain," including toothaches caused by food particles getting into the cavity holes. (*Id.* at 5-6.) Plaintiff's subsequent medical records show he was given another ten-day supply of antibiotics, and another thirty-day supply of pain reliever, on October 4, 2016. (Doc. No. 54-1 at 8.) At that time, another tooth – 04 – was added to the list of teeth needing extraction. (*Id.*) Dr. Stringfellow extracted numbers 02 and 03 on November 8, 2016. (*Id.* at 11.) According to Plaintiff's deposition testimony, Dr. Stringfellow did not prescribe more antibiotics at that time because Plaintiff was already taking them for an eye issue. (Doc. No. 54-2 at 66.) Dr. Stringfellow

extracted numbers 12 and 13 on March 7, 2017.  (Doc. No. 54-1 at 15.)  Post-operative pain medication was given after the extractions.  (*Id*. at 11, 15.)  The record does not indicate whether 04 and 27 have been extracted, but Plaintiff testified in his deposition that the composite filling for 21 was the only remaining issue to be addressed.  (Doc. No. 54-2 at 69-71.)

### III.    SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]"  Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825 (8th Cir. 2007).  The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy.  *Id.*  (citations omitted).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case.  *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012).  Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment.  *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

## IV. ANALYSIS

### A. Official Capacity Claim

Plaintiff's Complaint attempts to state claims against the named Defendants in both their official and personal capacities. (Doc. No. 2 at 1.) To the extent Defendant CCS has an official capacity, Plaintiff's claim against it in that capacity should be dismissed. Neither a state nor its officials acting in their official capacities are "persons" under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Additionally, states and governmental entities considered "arms of the state" are entitled to Eleventh Amendment immunity. *Id*. at 70. Therefore, I recommend any official capacity claim against Defendant CCS be dismissed.

### B. Personal Capacity Claim

Plaintiff contends he is entitled to summary judgment because there are no genuine issues of material fact. (Doc. No. 47 at 2.) He argues Defendant CCS has a constitutional obligation to provide appropriate dental care and has failed to meet that obligation. (Doc. No. 48 at 1.) Defendant CCS contends summary judgment should be granted in its favor because Plaintiff has not established a constitutional violation and because his claim is based on a theory of vicarious liability. (Doc. No. 55 at 2.)

A corporation acting under color of state law will only be held liable under § 1983 for its own unconstitutional policies. *Sanders v. Sears, Roebuck & Co.*, 984 F.2d 972, 975-76 (8th Cir. 1993) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978)). Defendant CCS, a private company under contract to provide medical and dental care to ADC inmates, is correct that it cannot be held liable under § 1983 on a theory of *respondeat superior*. *Id*. at 976. But I find Plaintiff's claim is not based on such a theory. "The proper test is whether there is a policy, custom or action by those who represent official policy that inflicts injury actionable under § 1983." *Id*.

The crux of Plaintiff's Complaint is that he has not received timely dental care because the Varner Unit does not have a full-time dentist and employs Dr. Stringfellow only part-time. (Doc. No. 2 at 5-6.) Thus, Plaintiff's claim is based not on a theory of vicarious liability but on Defendant CCS's own policy, which Plaintiff alleges is unconstitutional. Plaintiff's claim should not be dismissed on the basis that it relies on a theory of vicarious liability. However, for the reasons stated below, Plaintiff's claim should be dismissed on the basis that he has failed to demonstrate an Eighth Amendment violation.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments" on those convicted of crimes. *Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991). A prisoner advancing an Eighth Amendment claim based on medical care must, at a minimum, allege "deliberate indifference" to his "serious" medical needs. *Id.* at 297. Deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Deliberate indifference may be manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed. *Id*. at 104-05. However, an inadvertent or negligent failure to provide adequate medical care cannot be said to constitute "an unnecessary and wanton infliction of pain." *Id*. at 105.

Plaintiff's first allegation of deliberate indifference is that he had to wait two months to have the chipped tooth (09) repaired – from the initial consult on May 10, 2016, until the filling on July 18, 2016. (Doc. No. 2 at 5.) It is undisputed, however, that this tooth was only chipped – not infected or abscessed – at the time Dr. Stringfellow examined Plaintiff in May 2016. (Doc. No. 54-2 at 49-50.) Nor did it become infected or abscessed in the interim, before being filled in

July. (*Id.*) Plaintiff's dental records from the May and July visits do not mention any concerns other than general tooth decay. (Doc. No. 54-1 at 2-3.) Additionally, Plaintiff has not alleged he was in any pain resulting from the chipped tooth; even assuming he was, it is undisputed he was taking pain medication at the time. (Doc. No. 54-2 at 53-54.)

Dental problems can certainly constitute serious medical needs. *See, e.g.*, *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004) (plaintiff "presented evidence that he suffered extreme pain from loose and infected teeth, which caused blood to seep from his gums, swelling, and difficulty sleeping and eating"); *Moore v. Jackson*, 123 F.3d 1082, 1085 (8th Cir. 1997) (per curiam) (plaintiff had untreated infected tooth that caused severe pain, swelling of the jaw, and discharge); *Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) (plaintiff had impacted and infected wisdom tooth, "pus regularly oozed from the infection," and his mouth was "so swollen he could barely open it"); *Patterson v. Pearson*, 19 F.3d 439, 440 (8th Cir. 1994) (per curiam) (plaintiff's tooth was loosened during the filling process, resulting in severe pain, headaches, and swelling of the jaw). But absent complaints of pain or infection, Plaintiff's chipped tooth does not rise to the level of seriousness indicated in the cited cases. Moreover, Plaintiff does not dispute the chipped tooth was filled and this was appropriate treatment; his only complaint is he waited too long for the filling. Where an alleged constitutional violation is premised on a delay in providing access to medical care, the plaintiff must show officials ignored an acute or escalating situation involving a serious medical condition. *Givens v. Jones*, 900 F.2d 1229, 1233 (8th Cir. 1990). Plaintiff has not demonstrated his chipped tooth – which was not infected and was not causing him pain – amounted to an acute or escalating situation involving a serious medical condition. Accordingly, he has not established a violation of his Eighth Amendment rights on this point.

Plaintiff also alleges he had to wait too long to have his abscessed teeth extracted. (Doc. No. 2 at 5-6.) Both parties agree these teeth were not identified as infected, abscessed, or needing extraction until Plaintiff's August 31, 2016, examination by Dr. Stringfellow. (Doc. Nos. 54-1 at 6; 54-2 at 59-60, 76.) Still, none of the teeth had been extracted by the time Plaintiff filed his Complaint on September 30, 2016, and Plaintiff's subsequent dental records show the extractions were ultimately performed in November 2016 and March 2017. (Doc. No. 54-1 at 11, 15.) Plaintiff contends this delay amounted to a constitutional violation. I disagree.

There is no question Plaintiff's abscessed teeth constituted a serious medical need. *See, e.g.*, *McRaven v. Sanders*, 577 F.3d 974, 982 (8th Cir. 2009) (an objectively serious medical need is one that either has been diagnosed by a physician as requiring treatment, or is so obvious that even a layperson would easily recognize the necessity for a doctor's attention). But Defendant CCS has submitted evidence supporting its contention it was not deliberately indifferent to the need. Specifically, as soon as Plaintiff's teeth were identified as needing extraction, he was placed on the surgery list. (Doc. No. 54-1 at 6.) In the meantime, he was prescribed an antibiotic to treat the infection as well as a pain reliever. (*Id*. at 6-7.) It is true these prescriptions expired – the pain reliever expired on the day Plaintiff's Complaint was filed – but they were renewed shortly thereafter. (*Id*. at 8-9.) According to the Affidavit of Martin Zoldessy, DDS, Defendant CCS's Regional Dental Director, placing Plaintiff on the surgery list and starting him on medication was "appropriate care." (Doc. No. 54-3 at 3.) "In the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that she did not feel she received adequate treatment." *Dulany v. Carnahan*, 132 F.3d 1234, 1240 (8th Cir. 1997).

Plaintiff alleges he endured "severe and constant pain" while awaiting his extractions (Doc. No. 2 at 6), and I am not indifferent to that complaint. But he does not dispute that, even when Dr. Stringfellow's prescribed pain reliever expired, he was never without pain medication. Plaintiff acknowledged in his deposition he was taking Tramadol throughout the relevant time period for various reasons. (Doc. No. 54-2 at 41-42, 54, 68, 82.) Additionally, Defendant CCS's evidence demonstrates there was a purpose for delaying Plaintiff's extractions and treating the abscesses with medication in the meantime. According to Dr. Zoldessy's Affidavit, "extractions are typically performed after the abscess has resolved, as the abscess can make anesthesia more difficult to administer." (Doc. No. 54-3 at 3.) Furthermore, Plaintiff's deposition testimony indicates he wanted Dr. Stringfellow to immediately extract all of his problematic teeth, even before they abscessed, while Dr. Stringfellow believed some of them might be salvageable with fillings. (Doc. No. 54-2 at 60, 77.) While Plaintiff clearly feels he needed more aggressive treatment, a showing of deliberate indifference requires more than mere disagreement with treatment decisions. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

All of this being said, delays in treatment are not ideal, and Plaintiff's teeth may have been extracted sooner had the Varner Unit employed a full-time dentist.[3] The Eighth Circuit Court of Appeals has recently addressed delays in treatment resulting from shortages of dentists in prisons. *Cullor v. Baldwin*, 830 F.3d 830 (8th Cir. 2016). The Court in *Cullor* held prison administrators were entitled to qualified immunity on a claim of deliberate indifference because, although the delay was clearly caused by a shortage of dentists in the prison, the administrators did not create the staff shortage and had made efforts to secure additional staff. *Id*. at 839. The record in this

---

[3] According to Defendant CCS, the Varner Unit presently has a full-time dentist. (Doc. No. 54 at 5.) But there is no dispute that, at the time relevant to this action, Dr. Stringfellow worked twenty hours per week at the unit. (*Id*.)

10

case is not developed on this question; Defendant CCS has not submitted evidence showing any efforts to procure a full-time dentist at the Varner Unit (except to say the unit now has one). But the record also does not show the lack of a full-time dentist was totally to blame for the delay in extracting Plaintiff's teeth. As previously noted, there were other factors at play, including the need to wait for the abscesses to resolve before extracting the teeth. Moreover, and perhaps most importantly, Plaintiff has not sufficiently demonstrated any detrimental effect of the delay in his treatment. "Because [Plaintiff's] deliberate-indifference claim is based on 'a delay in medical treatment,' we measure 'the objective seriousness of the deprivation . . . by reference to the *effect* of delay in treatment.'" *Cullor*, 830 F.3d at 837 (quoting *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005)). "To establish this effect, the inmate 'must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment[.]'" *Id*. While I am sympathetic to Plaintiff's complaints of pain, he has not established the detrimental effect of the delay by way of verifying medical evidence.

It is unfortunate Plaintiff had to wait as long as he did to have his teeth extracted. I have not taken his allegations lightly, and I note there is probably room for improvement in Defendant CCS's provision of dental services at the Varner Unit. However, for all the reasons previously stated, I am unable to conclude Defendant CCS was deliberately indifferent to Plaintiff's serious medical needs. Accordingly, Defendant CCS is entitled to summary dismissal of Plaintiff's claims.

## V. CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. Plaintiff's Motion for Summary Judgment (Doc. No. 47) be DENIED.

2. Defendant CCS's Cross Motion for Summary Judgment (Doc. No. 53) be GRANTED.

3. Plaintiff's claims against Defendant CCS be DISMISSED with prejudice.

4. Plaintiff's cause of action (Doc. No. 2) be DISMISSED.

5. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from an Order adopting these recommendations would not be taken in good faith.

DATED this 28th day of July, 2017.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE